## THE STATE OF IOWA V. MARVIN.

1. CRIMINAL LAW: JOINT INDICTMENT AND SEVERAL TRIAL. Defendants jointly indicted may be separately tried on the motion of the State.

2. SAME: PRESUMPTIONS. When the record fails to show affirmatively that the term continued three clear days after the return of the verdict of a jury in a criminal action, and judgment was rendered thereon before the expiration of three clear days, the Supreme Court will presume that the judgment was defrayed until the approaching adjournment of the court rendered it necessary to pronounce and enter it of record.

3. LEWD AND LASCIVIOUS COHABITATION. Evidence tending to show two acts of private incontinence is insufficient to sustain an indictment under ¿ 4321 of the Revision of 1860, for lewed and lascivious conduct.

*Appeal from Marshall District Court.*

SATURDAY, DECEMBER 21.

THE defendant and one Lucy Stone were jointly indicted under § 4351 of the Revision. The defendant was convicted, and the court having overruled a motion in arrest of judgment, he now appeals.

*H. C. Henderson* for the appellant.

1. Section 4789, Revision ;1860, provides for separate trial of defendants jointly indicted. Appellant claims that separate trials are granted only on application of defend-

ants, in case of felony as matter of right; and in other cases *ex gratia*. But if plaintiff has the right, with leave of court, to set aside his election as made in the indictment, then the court must exercise a sound discretion; and hence if the motion (as in this case,) is based on the admission of the husband of one of the defendants as a witness, when he can not testify against the other defendant without criminating his wife, as is certainly the case here, it ought not to be granted. See § 3983 of Rev. 1860.

2. The motion for a new trial ought to have been granted. The indictment is under § 4351 Rev. 1860. The offense consists in *lewdly and laciviously associating and cohabiting together*, which is something more than an occasional act of intercourse. " Cohabiting " means more than merely living in the same house, and " lewdly and lasciviously " means more than occasional sexual intercourse. The evidence shows they (defendants,) sustained the relation of master and servant, which is not properly a cohabitation, in the meaning of the statute, and there is no evidence showing directly even a single act of intercourse, and the evidence does not tend to prove more than *two* acts of intercourse.

3. The Revision 1860, § 4862, provides when judgment shall be entered on a verdict. The record show that the verdict was rendered on the 3rd day of September, and judgment was rendered thereon September 5th, and bill of exceptions filed in court on the 6th. Judgment was rendered less than " three clear days " after verdict, and one day before court adjourned. Surely this is error.

*C. C. Nourse*, Attorney General, for the State, upon the question of a separate trial, made the following points. 1. That under § 4789 of Revision the trial of the defendants separately was within the discretion of the court. 2. The discretion was properly exercised. 3. This was not a charge of felony. Upon the question of the judgment, the follow-

ing: 1. The record does not show that the court was in session three clear days after verdict. 2. The statute § 4861 and 4862, is directory and no prejudice is shown. 3. The record shows there was no prejudice. 4. No exception was taken at the time. Upon the question as to the evidence: 1. The witness became the husband of one of the defendants after the offense was committed. 2. Was not the husband of this defendant.

BALDWIN, J.—The attorney for the State filed a motion for a separate trial in the District Court, based upon the ground that one Gormet, (the husband of the defendant, Lucy Stone,) was the principal witness for the State. The sustaining of this motion is the first error assigned.

Section 4789 provides, that where two or more defendants are jointly indicted for a felony, any defendant requiring it, may be tried separately. In other cases defendants jointly indicted may be tried jointly, or separately, in the discretion of the court.

This case of defendant falls within the class of causes provided for in the latter part of this section, as the crime with which he was charged is but a misdemeanor.

The argument of appellant is, that the State having elected to indict the defendants jointly, it is therefore bound by such election; and that the application for a separate trial can be made but by the defendant. We can not concur in this construction of the statute. The wording of the statute renders the intention of the legislature very obvious· Defendants jointly indicted for a misdemeanor may be tried separately or jointly as the court in its discretion may direct. The State as well as the defendant, under the latter part of this section may ask for and obtain a separate trial.

Did the court abuse its discretion in granting the State a separate trial? We think not. The witness Gormet, sub-

sequent to the time at which the offense is alleged to have been committed, became the husband of Lucy Stone. He, as it is stated in the motion, was an important witness for the State. He could not be a witness against his wife, and if a separate trial could not have been granted, the State would thus be deprived of its witness. It was the duty of the court to protect the rights of the State, and in doing so it did not abuse its power.

The second error assigned is, that the court did not allow to defendant " three clear days " between the verdict of the jury and the rendition of the judgment. This error does not affirmatively appear from the record. It appears that the verdict of the jury was rendered on the 3d day of the month, and the judgment pronounced on the 5th. It also appears that the bill of acceptions was signed in upon court upon the 6th. The court is required to allow three clear days to intervene only in case the term is likely to continue long enough to justify this extention.

The record fails to show that the term continued three clear days after the verdict of the jury. *Clear days*, as here used, are days *exclusive* of the day the verdict was rendered and the day upon which judgment should be pronounced.

In the absence of any showing to the contrary we are to presume that the court deferred its judgment to as remote a period as it reasonably could.

The object of this provision of the law is evidently to give the defendant ample time to prepare his application for a new trial. The defendant does not even claim that he was in any manner prejudiced by this action of the court. On the contrary, it appears that his motion for a new trial was made and passed upon by the court.

The third point made by the counsel for appellant is, that the verdict was against the evidence, and that a new trial should have been granted for this reason. The charge in

the indictment is, that the defendants not being married to each other, did lewdly and laciviously associate and cohabit together. The State relied upon the testimony of two witnesses, to establish the defendants guilt. The first one, Richard Wright, testified substantially as follows: That when the defendant moved into the said county, Lucy Stone came with him; that defendant said they were not married, that he had found her on the road in search of employment, had hired her to come with him to Iowa, to do his cooking, washing and house work. Witness told defendant that he could not live with Lucy as he was doing; that the law of our country would not permit it. Defendant answered that if they made any fuss about it he could marry her, and he intimated that if he wanted to have illicit intercourse with her it was his own business. Upon cross-examination witness further stated, that he had based his remarks about the unlawfulness of their living together only upon the fact that they lived alone most of the time in the same house; that he had seen nothing out of the way and knew nothing only from their living together.

The second, Frederick Gormet, the husband of the said Lucy, testified that the defendant and Lucy lived together as a hired girl to a man; that he had lived with defendant several months; there were but two beds in the house, he and his brother slept in one bed and Lucy in the other and the defendant slept on the floor. He saw the defendant get out of the bed with Lucy only twice, and that was when it was so cold he could not sleep upon the floor. This was all the evidence introduced.

Is this evidence sufficient to sustain the indictment? The testimony of Wright, when properly divested of its irrelevancy, proves nothing. In fact, upon his cross-examination it is made to appear that he knew nothing, and that his suggestion to the defendant as to the manner they were

living was a matter of suspicion, and not founded upon any misconduct on the part of defendants within his own personal observation. The State must rely upon the facts stated by the witness Gormet to establish the defendant's guilt. Conceding the fact, that from the evidence of Gormet the jury could rightfully determine that the defendant, on the two occasions referred to, was guilty of sexual intercourse with said Lucy, is it sufficient to show a lewd lacivious association and cohabitation within the meaning of the statute?

Bishop, in his work on Criminal Law, in referring to statutes of the different States upon the subject of lewdness, says: "When the words were, 'shall lewdly and laciviously associate together,' the cohabitation meant, was held to be, not merely incontinence in a single instance, but a dwelling or living together by the parties, the design of the enactment being, in the language of the court, ' to prevent evil and indecent examples tending to corrupt the public morals." "Therefore, also, under a statute like the one last mentioned, something more must be shown than mere private incontinence, continued to however great a degree." To constitute "living together in adultery or fornication, something more than mere occasional acts of private intercourse is required." In the case of *Searls* v. *The People*, 13 Illinois 597, the Supreme Court reversed the judgment of the court below, for the reason that the following instruction was given, to-wit: "That in order to constitute this offense, even one act of sexual intercourse need not be proved by positive testimony, but that the offense is sufficiently proved by any circumstances which raise the presumption of unlawful intimacy and sexual and adulterous intercourse."

The court in their opinion say, " that in order to constitue this crime, the parties must dwell together openly and notori-

ously upon terms as if the conjugal relation existed between them. In other words they must cohabit together. There must be habitual illicit intercourse between them. The object of the statute was to prohibit the public scandal and disgrace of the living together of persons of opposite sexes notoriously in illicit intimacy, which outrages public decency, having a demoralizing and debasing influence upon society."

In the case of the *Commonwealth* v. *Catlin,* 1 Mass, when the defendant was indicted for open, gross lewdness and lacivious behavior, and when the evidence tended to show improper conduct on the part of defendant, the court were of the unanimous opinion, that although the facts proved amounted to an offense, yet they did not prove the offense as charged in the indictment. "Admitting" they say, "everything which has been testified to be true, there is certainly nothing more proved than *secret or private* lewdness and lacivious behavior, which can not in any degree support the the indictment."

So also, in the case of *The Commonwealth* v. *Calef,* in which the defendant was indicted for unlawfully and laciviously associating and cohabiting with one Emily Kimball, in which it was admitted that one act of criminal intercourse as charged, could be proved.

The court say, "by cohabiting must be understood a dwelling or living together, not a transient and single unlawful interview. The design of the statute in this particular provision was, to prevent evil and indecent examples tending to corrupt the public moral. Perhaps an indictment for the crime of adultry might have been maintained by the evidence stated, but on the present indictment, the defendant could not be convicted."

Applying the rule, as appears to be well settled from the foregoing authorities, to this case the circumstances as re-

ferred to by the witness Gormet, if ever the jury could infer therefrom that the defendant was guilty of sexual intercourse on both occasions, would fail to establish his guilt as charged in the indictment.

The defendant and Lucy according to the testimony of the State, were living together in the same house in the relation of master and servant, not as husband and wife. Secret acts of intercourse would not make them liable.    The burden of the offense is the open, lewd, lacivious conduct of of the parties living together as husband and wife.    It is the publicity and disgrace, the demoralizing and debasing influence, that the law is designed to prevent.

The State fails to show any lacivious or indecent conduct except it is the fact of defendant's twice leaving the bed of Lucy.    Whether this was in the night or in the morning, whether it was done openly or secretly, the evidence fails to show.    Believing that the State has failed by the evidence, as certified to us, to establish the defendants guilt as charged in the indictment, the judgment is reversed and a new trial awarded.